UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| RICHARD N. BELL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-02-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| STARTUP PRODUCTION, LLC, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case involves the use of a copyrighted photograph of the Indianapolis skyline. [Record No. 1] Plaintiff Richard Bell contends that he took the subject photo and that Defendant Startup Production, LLC created a website for Defendant Upscale Furniture, LLC that published the photo for advertising purposes, infringing on his copyright in violation of 17 U.S.C. § 101 et seq. [*Id.*] The parties filed cross motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. [Record Nos. 30, 32]

Because Bell owns the copyright of the photo, the defendants have not established judicial estopped applies. Genuine issues of material fact also remain regarding whether the defendants copied the photo. As a result, the defendants' motion for summary judgement will be denied. Bell's motion be granted, in part, and denied, in part.

I.   BACKGROUND

Bell took a photograph of the Indianapolis skyline in 2000 and posted it online. [Record No. 32-2, p. 2] The defendants contend that the photo was posted on Pinterest by the City of Indianapolis and does not bear a copyright notice or identify Bell. [Record No. 30, p. 5 n.3]

Bell asserts he first published the photo on webshots.com and later published it on richbellphotos.com. [Record No. 32-1, p. 2] Commercial licenses of the photo have been sold through these sites since around 2004. [Record No. 30-10, p. 96]

Bell's wife filed for divorce on November 26, 2008. [Record No. 32-2, p. 4] The divorce proceedings required that each spouse complete a financial declaration. [*Id.*] Each spouse had copyrights but neither listed their respective copyrights in their financial declarations. [*Id.*, at p. 5] The marital assets listed in the financial declarations were divided between the spouses consistent with the divorce proceedings. [*Id.*]

Bell registered the photograph with the United States Copyright Office on August 4, 2011. [*Id.*, at p. 2] He used a reverse-image search engine in 2017 and discovered the photograph on Upscale's website at http://upscale-furniture.com/indianapolis-in. [*Id.*] Bell subsequently notified Upscale of his copyright and demanded that it pay for the unauthorized use of the photo. [*Id.*, at 3] Upscale accessed Bell's website and paid $200 for a commercial license of the photograph bearing the copyright notice after receiving Bell's notice of infringement. [*Id.*, at 3; Record No. 30-7] The license states it is a "perpetual, nonexclusive, nontransferable worldwide license to the accompanying image." [Record No. 30-9] The accompanying image was the photograph of the Indianapolis skyline which included the copyright notice. [*Id.*]

Counsel contacted Bell after purchasing the license and informed him of the defendant's position: that the license was retroactive and relieved the defendants from any liability for copyright infringement. [Record No. 32-2, p. 3-4] Bell subsequently returned the $200, terminated the license, and demanded that the defendants remove the photograph from Upscale's website. Upscale refused to cancel the purchase. [*Id.*, p. 4; Record No. 30-8]

Startup created Upscale's website and maintains certain access and control over the site. [Record Nos. 30-5, p. 1-2] The defendants assert that an individual identified as Alison Peterson uploaded the photo to Upscale's website and that she was never employed by Startup or Upscale. [Record No. 30, p. 10]

## II. STANDARD OF REVIEW

Summary judgment is appropriate when there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

The Court views all the facts and draws all inferences from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991).

## III. DISCUSSION

### A. Copyright Infringement

"If a person, without authorization from the copyright holder, puts a copyrighted work to a use within the scope of [an exclusive right], he infringes the copyright." *Twentieth Century*

*Music Corp. v. Aiken*, 422 U.S. 151, 155 (1975). These exclusive rights include rights to reproduce the copyrighted work through copies and to distribute copies of the work to the public. *Aiken*, 422 U.S. at 154-55 (citing 17 U.S.C. § 106). "To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." *Kohus v. Mariol*, 328 F.3d 848, 853 (6th Cir. 2003); *see also Feist Publ'ns., Inc. v. Rural Tel. Servs., Inc.*, 499 U.S. 340, 361 (1991).

The defendants assert that the plaintiff is judicially estopped from asserting ownership of the copyright and that "there are no facts to establish that Startup and/or Upscale copied the 'Indianapolis Photo.'" [Record No. 30, p. 6]

**1. Copyright Ownership**

Ownership of a copyright initially vests with the author of the work. 17 U.S.C. § 201(a). The defendants do not assert that the plaintiff does not own the copyright.[1] Instead, they contend that he is judicially estopped from asserting ownership because it is undisputed that he did not list the copyright as an asset in his divorce proceedings. [Record No. 30]

The Supreme Court has identified three considerations that are typically relevant in determining whether judicial estoppel should apply: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceedings would create the perception that either the first or the second

---

[1] There is a copyright action currently pending in the Southern District of Indiana involving the same photo of the Indianapolis skyline as this action. *Bell v. Maloney*, 1:16-cv-01193-RLY-DLP (S.D. Ind.). However, the defendant in *Maloney* argued that Bell does not own the copyright because the photo was a work made for hire since "his act of taking the Indianapolis Photo was incidental and ancillary to his role as a partner in the firm." *Id.* (No. 55) The court held a bench trial on July 24, 2018 and the case is pending. *Id.* (No. 80)

court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001).

Judicial estoppel does not apply where the prior inconsistent position occurred because of "mistake or inadvertence." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002); *see also New Hampshire*, 532 U.S. at 753. The Sixth Circuit also considers an absence of bad faith in determining judicial estoppel. *Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 895 (6th Cir. 2004). Additionally, judicial estoppel is "an equitable doctrine invoked by the court at its discretion." *New Hampshire*, 532 U.S. at 750.

The plaintiff argues that judicial estoppel does not apply because his silence regarding the copyright during the divorce proceeding was inadvertent. While the plaintiff and his ex-wife's respective copyrights were not disclosed in the divorce proceeding, the plaintiff asserts he "simply was unaware at the time of his divorce that he had an obligation to list the copyrights to the photographs he had taken during the marriage, and neither he nor his wife included any copyright interests in their respective financial declarations." [Record No. 32-1, p. 22] Thus, he contends that he "did not intentionally hide any assets in the divorce proceeding, and neither the Indiana state court nor Plaintiff's former spouse has ever suggested as much," so there was not an "intentional misrepresentation to any court." [Record No. 32-1, p. 25] Further, "while both Plaintiff and his wife were well-aware of the other's photographs taken during the marriage, it never occurred to Plaintiff (or, presumably, his wife) to include copyrights in financial declarations of marital assets." [Record No. 42, p. 7]

The defendants do not directly address the plaintiff's assertion that the omission of the copyright in the divorce proceeding was due to mistake or inadvertence. They assert instead

that the Court should disregard the plaintiff's declaration because he "offered no material support for these claims; instead, he offered only speculation regarding what Ms. Nancy Bell knew regarding the Photo." [Record No. 40, p. 3] (citing *Bell v. Halcyon Business Publications Inc.*, 2018 WL 2364091 *1 n. 3 (S.D. Ind. 2018)). However, the court in *Halcyon* did not consider representations made by the plaintiff because they were unsupported by personal knowledge. 2018 WL 2364091 *1 n.3.

In the present case, it is likely that the plaintiff has personal knowledge regarding whether his ex-wife was aware of his photos taken during the marriage. For example, the plaintiff states in his affidavit that he had large prints of the photo displayed in his home and his office which his ex-wife had seen, so the Court will not disregard the plaintiff's assertions. Judicial estoppel is not applicable because the plaintiff's omission was due to mistake or inadvertence and the defendants do not assert the omission was made in bad faith.

But even if the omission was not due to mistake or inadvertence, the defendants fail to successfully assert the three considerations enumerated by the Supreme Court in *New Hampshire*. First, the plaintiff's present assertion that he owns the copyright is not clearly inconsistent with his earlier position because he was silent regarding his ownership of the copyright in the divorce proceedings. The cases cited by the defendants applying judicial estoppel due to assertions made in previous divorce proceedings are not binding and are distinguishable. *Kale v. Obuchowski*, 985 F.2d 360 (7th Cir. 1993); *Finley v. Kesling*, 433 N.E.2d 1112 (Ill. App. Ct. 1982); *Ellis v. Keystone Constr. Corp.*, 82 N.E.3d 920 (Ind. App. 2017). In *Kale* and *Finely* the individuals explicitly denied an interest in the assets at issue during their divorce proceedings. Here, however, the plaintiff was silent regarding the copyright. *Kale*, 985 F.2d 360; *Finley*, 433 N.E.2d 1112. *Ellis* is distinguishable because Ellis

and his ex-wife "intentionally left the Keystone interest out of the settlement agreement because they did not want to delay the dissolution proceedings." 82 N.E.3d at 926. The defendants have not asserted any facts indicating the plaintiff intentionally omitted the copyright from the divorce proceedings to receive some benefit.

Instead, the plaintiff claims he was unaware that he had an obligation to list the copyrights and neither he nor his wife disclosed any of their respective copyrights in their financial declarations. [Record No. 32-2, pp. 5-6] And while an omission can constitute a clearly inconsistent position, it is not necessarily tantamount to an acknowledgement. *Reynolds v. C.I.R.*, 861 F.2d 469, 474 (6th Cir. 1988) (citing *Oneida Motor Freight v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988)). Silence does not compel the conclusion that the plaintiff does not own the copyright. *Oneida*, 848 F.2d at 419. Therefore, even if the plaintiff's silence is viewed as being clearly inconsistent with his present claim, the defendants' assertion that the plaintiff's prior silence should be viewed as an acknowledgement that he doesn't own the copyright is directly contrary to *Oneida*.

Second, there would be no perception that this Court or the Indiana state court was deceived. While it is well-settled in Indiana "that in a dissolution action, all marital property goes into the marital pot for division," the plaintiff's and his ex-wife's respective copyrights were not before the divorce court. *Falatovics v. Falatovics*, 15 N.E.3d 108, 110 (Ind. App. 2014) (*citing* Ind. Code § 31-15-7-4(a)). The Indiana state court simply did not address the ownership of the copyright because the plaintiff did not explicitly deny ownership of the copyright. Instead, he was simply silent on the issue during the divorce proceedings.

Finally, the plaintiff would not obtain an unfair advantage against the defendants because he is simply asserting ownership of the copyright. The assertion of ownership does

not give the plaintiff an unfair advantage in this action because the defendants had the opportunity to refute his ownership. But instead, they decided to only argue judicial estoppel. Additionally, there would be no unfair detriment to the defendants because they do not contend that they relied on the plaintiff's silence in the divorce proceeding prior to posting the photo on their website.

The defendants have not successfully asserted any of the three considerations identified by the Supreme Court for judicial estoppel to apply. *New Hampshire*, 532 U.S. at 750-51. Summary judgment is appropriate in favor of the plaintiff regarding ownership of the copyright because the defendants' only competing argument regarding is based on judicial estoppel.

### 2. Copying

"[W]here there is no direct evidence of copying, a plaintiff may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'" *Kohus v. Mariol*, 328 F.3d 848, 853-54 (6th Cir. 2003) (quoting *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999)). "Access is proven when the plaintiff shows that the defendant had an opportunity to view or to copy plaintiff's work." *Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 316 (6th Cir. 2004) (quoting *Glanzmann v. King*, 8 U.S.P.Q.2d 1594, 1595 (E.D. Mich. 1988)). And a mere possibility of access is insufficient. *Id*. Instead, "[a] plaintiff must establish that defendant(s) had a reasonable possibility to view plaintiff's work." *Id*. (internal quotations and citations omitted). "[W]here the plaintiff cannot prove access, the copyright infringement claim can still succeed, but only by proof of a higher level of similarity than the merely substantial." *Id*. at 317. "The quantum of similarity that will substitute for proof of

access is 'striking similarity.'" *Id*. "Such striking similarity precludes the possibility of independent creation." *Id*.

The defendants attached a screenshot of an internet search for "Indianapolis skyline canal" in their motion for summary judgment and concede that the plaintiff's photo is one of the first images returned by the search. [Record No. 30-2; Record No. 30, p. 5 n. 3] The search is likely sufficient to demonstrate the defendants had access to the photo because it shows the defendants had a reasonable possibility to view the photo. If the search is not enough to show access, the plaintiff can still establish copying if he can demonstrate striking similarity between his photo and the one posted on Upscale's website.

"Because substantial similarity is often an extremely close question of fact" summary judgment is often not appropriate in copyright infringement cases. *Jones v. Blige*, 558 F.3d 485, 490 (6th Cir. 2009). However, a "court may compare the two works and render a judgment for the defendant on the ground that as a matter of law a trier of fact would not be permitted to find substantial similar." *Id.* (internal quotations and citations omitted).

Summary judgment is not appropriate in the present case because a reasonable trier of fact could determine the defendants had access and the photos are substantially similar. Additionally, if a reasonable trier of fact determines the defendants did not have access, they could reasonably find the photo on Upscale's website and the plaintiff's photo are strikingly similar.

Further, the defendants assert that the plaintiff produced absolutely no evidence that they copied his photo. They claim that the only evidence the plaintiff provided of copying was a screenshot of Upscale's website. However, the screenshot can be viewed as evidence that

the defendants copied his photo because the plaintiff's photo and the photo posted on Upscale's website in the screenshot could reasonably be viewed as substantially or strikingly similar.

Finally, the defendants contend they did not copy the photo because their records indicate Peterson uploaded the photo. The defendants further assert that Peterson was not an employee of Startup and Upscale did not put the Photo on its website. [Record No. 30, p. 20] The plaintiff argues that,

> more than likely, if Ms. Peterson was not technically Startup's 'employee,' she assisted either Startup or Upscale in the design or maintenance of the website. It is simply not plausible to believe that someone unconnected to either party somehow obtained security credentials access to the website and inserted the Photograph without either Defendant's oversight or consent.

[Record No. 32-1, p. 11] The plaintiff also argues that Startup's website indicates Peterson was the manager of work done on a website for a different client of Startup. [*Id.*] There is a dispute of material fact on this issue because the parties disagree over the extent of control the defendants may have had over Peterson.

In short, summary judgement is not appropriate regarding this issue. There are genuine issues of material fact regarding whether: (i) the defendants had access to the photo, (ii) the plaintiff's photo and the photo on the website are substantially or strikingly similar, and (iii) the defendants had any control over Peterson's uploading the photo to Upscale's website.

### B. Vicarious Liability

If the defendants did not directly copy the photo, the defendants can still be vicariously liable for copyright infringement. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 435 (1984); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). To establish vicarious liablity, the plaintiff must prove that the defendants received a financial benefit from the direct infringement and had the right and ability to stop

or limit the infringement but did not. *Grokster*, 545 U.S. at 930; *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007); *Corbis Corp. v. Starr*, 2009 WL 2901308 at *3 (N.D. Ohio 2009). "The use of copyrighted images to help draw customers can constitute a financial benefit." *Corbis*, 2009 WL 2901308 at *3 (citing *Perfect 10, Inc. v. Google, Inc.*, 416 F. Supp. 2d 828, 857 (C.D. Cal. 2006)).

Startup received a financial benefit from the infringement because it were being paid to design the website for Upscale. Upscale received a financial benefit because the photo was being used to draw customers to its store. [Record No. 16, p. 5] Startup also had access and control of Upscale's website to create, maintain, and edit the site's content. [Record No. 30-5, p. 1-2] There is a question of material fact regarding how much control Upscale had of its website because while it owned the site and paid Startup to manage it, it is unclear how much influence Upscale had over the site. Additionally, there is a question of material fact regarding how much control the defendants had over Peterson. These issues preclude summary judgment on the question of vicarious liability.

**C. Upscale's License**

The defendants next argue that Upscale purchased a license to use the photo and that the license was retroactive because its terms indicate it was perpetual. There is no legal prohibition of retroactive licenses if it is authorized by the rights holder. *Spinelli v. National Football League*, 96 F. Supp. 3d 81, 123-24 (S.D.N.Y. 2015) (citing *Wu v. Pearson Educ. Inc.*, 2013 WL 145666 at *4 (S.D.N.Y. 2013)). *But see Davis v. Bilge*, 505 F.3d 90, 104 (2d Cir. 2007) (addressing retroactive copyrights in the context of co-owners and holding that a license or agreement in copyright can only act prospectively). Therefore, the Court must determine whether the plaintiff authorized a retrospective license.

State contract law governs the interpretation of licenses. *Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 437 (6th Cir. 2009).

> The primary object in construing a contract or compromise settlement agreement is to effectuate the intentions of the parties. Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible.
>
> Where a contract is ambiguous or silent on a vital matter, a court may consider parol and extrinsic evidence involving the circumstances surrounding the execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties.

*Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384-85 (Ky. App. 2002) (citations and internal quotations omitted).

The parties agree Kentucky law applies to the present case. [Record No. 30, p. 21 n. 57; Record No. 32-1, p. 14] "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell*, 94 S.W.3d at 385. An ambiguous contract may be construed against the drafter only as a last resort if extrinsic evidence does not provide an answer. *Mudd v. Mudd*, No. 2004-CA-001118-MR, 2005 WL 2807042 at *3 (Ky. Ct. App. Oct. 28, 2005). The plaintiff asserts "perpetual" does not mean "retrospective", while the defendants contend perpetual means for all time making the license retrospective. Because perpetual is not defined in the agreement and is ambiguous, the Court may use extrinsic evidence to interpret the meaning of term.

Plain terms of a contract will be given their usual meaning. *O'Bryan v. Massey-Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. Ct. App. Nov. 23, 1966) (citing *Bays v. Mahan*, 362 S.W.2d 732 (Ky. Ct. App. Dec. 7, 1962)). "Perpetual" is defined by Merriam-Webster's dictionary as "continuing forever," "valid for all time," or "holding something for life or for an unlimited time." Merriam-Webster's Dictionary, https://www.merriam-

webster.com/dictionary/perpetual. Alternatively, Black's Law Dictionary defines "perpetual" as "never ceasing; continuous; enduring; lasting; unlimited in respect of time; continuing without intermission or interval." Black's Law Dictionary Free, https://thelawdictionary.org/perpetual/ (2nd ed.). These definitions exemplify that perpetual is generally used to describe something that begins at a specific point and continues indefinitely. Therefore, the Court concludes that the usual meaning of perpetual does not include application retroactivity.

The defendants argue that the plaintiff granted at least one retroactive license in the past so the present license is retrospective. [Record No. 40, p. 8] However, the plaintiff explicitly granted a retroactive license as a settlement with Midwest User Group, indicating that he knew how to grant a retroactive license if that was his intent. [Record No. 30-17] The plaintiff agreed to settle with Midwest User Group and "retroactively grant [them] full rights to use the photo as [Bell] see[s] fit without the need to pay [Bell] anything further now or in the future." [*Id.*] Therefore, Midwest User Group paid for the license with the mutual understanding that it was a retroactive license.

The defendants here provide no indication that the plaintiff informed them that the license they purchased was retroactive and settled their past infringement. Thus, the Midwest User emails are distinguishable. The plaintiff's explicit grant of a retroactive license as a settlement with a different party does not mean he intended for the license in the present case to be retroactive. Because the extrinsic evidence indicates the license was not intended to be retroactive, summary judgment is granted in favor of the plaintiff regarding the license.

IV. CONCLUSION

For the reasons discussed above, it is hereby

**ORDERED** as follows

1. The defendants' motion for summary judgment [Record No. 30] is **DENIED**.

2. The plaintiff's motion for summary judgment [Record No. 32] is **GRANTED,** in part, and **DENIED**, in part.

3. Summary judgment is **GRANTED** in Plaintiff Bell's favor regarding the question of whether he owned the copyright. The Court further concludes that the defendants did not obtain a retroactive license.

4. Summary judgment is **DENIED** with respect to the issues of copying and vicarious liability.

Dated: November 20, 2018.

Signed By:
*Danny C. Reeves*
United States District Judge